UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHNNY KIMBLE,
        Plaintiff,

v.                                      Case No. 07C0266

WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT, et al.,
        Defendants.

## DECISION AND ORDER

Plaintiff Johnny Kimble, an African-American male and a former supervisor employed by the Wisconsin Equal Rights Division ("ERD"), a division of the Wisconsin Department of Workforce Development ("DWD"), brings this action against defendants, the DWD and the former ERD Administrator, J. Sheehan Donoghue, alleging that they discriminated against him on the basis of race and sex by failing to give him discretionary raises while giving such raises to white and female supervisors. Plaintiff alleges violations of various federal civil rights statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq. Defendants now move for summary judgment.

### I. FACTS

Plaintiff supervised the Milwaukee office of the Civil Rights Bureau, a bureau of the ERD, from 1976 until 2005, when he retired. The ERD also includes a Labor Standards Bureau. Defendant Donoghue administered the ERD from 1991 until 2003, when she retired. Plaintiff asserts that Donoghue discriminated against him by providing discretionary base-pay raises to other ERD supervisors, including Georgina Taylor, a white

female, James Chiolino, a white male and Michael Dixon, a white male. Defendants identify Taylor as Hispanic. Taylor was a supervisor in the Madison office of the Civil Rights Bureau, and Chiolino and Dixon were supervisors in the Madison office of the Labor Standards Bureau. Kimble and Taylor reported to Leanna Ware, director of the Civil Rights Bureau. Chiolino and Dixon reported to Robert Anderson, director of the Labor Standards Bureau. Both Ware and Anderson reported to Donoghue.

In the years 1999 to 2003, Wisconsin's compensation plans allowed Donoghue to reward employees for meritorious performance with base pay increases and/or lump sum payments. The ERD was supposed to develop criteria governing the granting of such awards and payments but apparently did not do so. In 1999, Donoghue granted plaintiff a $300 lump sum award, the only award she granted plaintiff. In 2000, she granted Taylor a fifty cent per hour award and also granted Chiolino a two dollar per hour award. In 2001, she granted Chiolino a one dollar per hour award, and in 2002, she granted Dixon a one dollar per hour award. Donoghue never granted plaintiff any discretionary hourly raises. I will state additional facts in the course of the decision.

## II. DISCUSSION

In addressing defendants' motion for summary judgment, I take the facts and all reasonable inferences therefrom in the light most favorable to plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). I may grant the motion only if no reasonable jury could find for plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, to survive summary judgment, plaintiff must present enough evidence to enable a reasonable jury to conclude that defendants denied him raises based on his race or gender. Plaintiff may do this by either the direct method or the indirect burden-

shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[1] In the present case, plaintiff takes both approaches, but I need only consider the indirect method to resolve defendants' motion.

Under the McDonnell Douglas burden-shifting approach, a plaintiff must first establish a prima-facie case. To do so, he must show (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he suffered an adverse employment action; and (4) that similarly-situated employees who were not members of the protected class were treated more favorably. Goodwin v. Bd. of Trs. of the Univ. of Ill., 442 F.3d 611, 617 (7th Cir. 2006). Once established, a prima facie case creates a rebuttable presumption of discrimination. Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 931 (7th Cir. 1996). The defendant may rebut the presumption by articulating a legitimate non-discriminatory reason for the action in question. Id. If the defendant does this, the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was actually a pretext. Id.

With respect to the prima facie case, defendants acknowledge that plaintiff is a member of a protected class and performed his job satisfactorily. Defendants, however, argue that plaintiff fails both to establish that he suffered a materially adverse employment action and to identify a similarly situated individual who was treated better than he was. Defendants further argue that even assuming plaintiff makes out a prima facie case of discrimination, he fails to show that defendants' proffered reason for the action in question

---

[1] Although plaintiff brings claims under various statutes, including Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, in this context, I analyze all claims using the Title VII methodology. Lewis v. City of Chicago, 496 F.3d 645, 650 (7th Cir. 2007); Patton v. Indianapolis Pub. Sch. Bd., 276 F.3d 334, 338 (7th Cir. 2002).

3

– that plaintiff was not an outstanding employee, and therefore did not merit a discretionary raise – is pretext.

### A. Adverse Action

In this case, whether plaintiff can establish that he suffered a materially adverse employment action depends on whether the discretionary hourly pay increases are better characterized as a raise or as a bonus. A denied raise is an adverse employment action. Farrell v. Butler Univ., 421 F.3d 609, 614 (7th Cir. 2005). However, the denial of a "more transient payment," such as a bonus, does not constitute an adverse employment action where the employee is not automatically entitled to it. Lewis, 496 F.3d at 653; Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996). "Raises are a normal and expected element of an employee's salary, while bonuses generally are sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer." Lewis, 496 F.3d at 653. Further, an award bestowed for excellent performance cannot be expected by an employee as a matter of course. Farrell, 421 F.3d at 614. However, an award that "bestows . . . a permanent increase in base salary strongly suggests that the reward is a raise." Id.

Defendants argue that the discretionary base-pay-building award in question amounts to a bonus rather than a raise, and therefore its denial cannot constitute an adverse employment action. I disagree. While the award does share characteristics of a bonus, such as its irregularity, recognition of meritorious performance, and discretionary nature, it also shares characteristics of a raise. Specifically, it bestows a permanent increase in salary on the employee, thereby having continuing effects beyond just a single, lump-sum payment. As the Seventh Circuit has stated, this is "strongly" suggestive of a

4

raise. Id. And in light of the potential for abuse in doling out the discretionary award were it characterized as a bonus, see id., the base-pay-building award here is more properly characterized as a raise. Therefore, the denial of the award constitutes a materially adverse employment action.

### B. Similarly Situated

Defendants also contend that Chiolino and Dixon[2] cannot be similarly situated to plaintiff. A similarly situated employee is one who is "directly comparable to the plaintiff in all material respects." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 791 (7th Cir. 2007). When determining whether employees are similarly situated, "a court must look at all relevant factors, the number of which depends on the context of the case." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). For example, a court may consider whether the employee and the plaintiff had similar job responsibilities, the same supervisor, and similar performance. Boumehdi, 489 F.3d at 791. An employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity. Radue, 219 F.3d at 618.

In the present case, defendants argue that Chiolino and Dixon are not similarly situated to plaintiff because they were supervisors in a different bureau within the ERD, reported to a different immediate superior than plaintiff, and were responsible for enforcing different statutes and regulations than plaintiff. Despite these differences, however, I cannot say as a matter of law that Chiolino and Dixon are not similarly situated to plaintiff. Notwithstanding that they were responsible for enforcing different laws, Chiolino and Dixon

---

[2] Defendants concede that Georgina Taylor is similarly situated to plaintiff, arguing instead that she was not treated any better than plaintiff.

5

were still supervisors within a bureau of the ERD, just like plaintiff. All ERD supervisors perform supervisory functions, such as training staff, managing staff conflict, establishing procedures, reviewing the work of subordinates, evaluating staff performance, and generally ensuring that their departments are functioning correctly. All ERD supervisors also are responsible for handling complex cases and acting as a public relations link for their Bureau and the ERD. Additionally, Chiolino, Dixon and Kimble appear to have the same standing within the ERD hierarchy – that of Bureau supervisor, subordinate to Bureau Director followed by ERD Administrator. Moreover, although Chiolino and Dixon reported to a different Director than Kimble, the pay increase decisions were all made by the same person, defendant Donoghue. As such, the decision maker in this case was the same for all the supervisors. Thus, given that Chiolino, Dixon and Kimble shared similar supervisory functions, had the same standing within the ERD hierarchy, and had the same decision maker in terms of the pay increase decisions, at this point I cannot find that Chiolino and Dixon are not similarly situated to Kimble for purposes of the McDonnell Douglas analysis.

### C. Pretext

Defendants also claim that plaintiff has failed to establish that the articulated legitimate, non-discriminatory reason defendants put forth for not giving plaintiff a discretionary raise – that plaintiff's performance was not "outstanding" – is pretext. In the context of the McDonnell Douglas framework, "pretext is more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000) (internal quotations

6

omitted). Thus, plaintiff cannot prevail by showing that defendants' non-discriminatory reason for the adverse action was wrong; rather, plaintiff must show that defendants do not actually believe the reason they offered. Id. at 1008-09.

In the present case, plaintiff has presented enough evidence to create a genuine issue with respect to pretext. Defendants claim that plaintiff's performance was never "outstanding" and therefore he did not merit a discretionary raise. To support this claim, defendants point out specific deficiencies with plaintiff's performance – namely, that he was never capable of producing written product free of grammatical and spelling errors, that he was never able to help his staff produce clear, concise initial determinations, that he could not be relied upon to produce written policy and procedure, and that he failed to adequately communicate with his immediate supervisor, Leanna Ware, regarding developments and problems arising from his office. Defendants further assert that plaintiff's performance slipped markedly following the lump-sum award in 1999.

However, plaintiff's performance evaluations, signed by Ware, raise questions about the veracity of these claims. For example, some of plaintiff's annual evaluations list as an accomplishment that plaintiff actually helped his staff draft clear, concise initial determinations. (Ware Aff. Ex. B pp. 2-3). Additionally, some evaluations note that plaintiff communicated well with Ware and kept her informed of developments, including cases that could draw media attention. (See Ware Aff. Ex. B pp. 4-6, ).

Moreover, contradicting defendant Donoghue's assertion that plaintiff's performance markedly slipped following the lump-sum award in 1999, plaintiff's evaluations in the years just following that award show that plaintiff' significantly reduced investigation times, to a new low even, and increased office production; maintained good communication with his

7

supervisor; contributed a substantial number of cases to the Bureau's overall production; helped his staff create clear, concise initial determination; and increased his office's efficiency even in the face of staff shortages. (Ware Aff. Ex. B pp. 1-5.)

Additionally, plaintiff presents evidence creating some doubt as to the "outstanding" standard Donoghue uses as related to plaintiff's performance, and whether she applied that same standard in awarding hourly pay raises to similarly situated employees. Although Donoghue apparently did not consult with Ware or Anderson specifically about the discretionary awards, she did periodically meet with the two Bureau Directors to discuss how things were going in the Bureaus; this also encompassed discussions with the Directors about the various ERD supervisors. (Lewison Aff. Ex. 7 p. 6.) Moreover, Donoghue submits evidence in the form of an Affidavit from Director Ware to support her assertion that plaintiff's performance was not outstanding and therefore did not merit an award. As such, it would be logical to look to the opinion of Director Anderson to determine whether Dixon's performance were "outstanding" and therefore merited the discretionary pay raise. However, plaintiff has submitted deposition testimony given by Director Anderson suggesting that he did not feel that Dixon merited any kind of award. (Lewison Aff. Ex. p. 7.) And Dixon's performance evaluations described his performance as "above average," not "outstanding."[3] (Lewison Aff. Ex. 12). In sum, there is a question as to whether defendants' actually believed the reason they articulated for the adverse action

---

[3] Donoghue asserts that the Dixon award was also based on retention needs; however, the documentation of that award discusses only performance merit. (Lewison Aff. Ex. 9).

8

in question–that plaintiff's performance was not outstanding while the performance of employees such as Dixon was.

Ultimately, I conclude that this case requires resolution by a jury.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment is **DENIED.**

Dated at Milwaukee, Wisconsin this 2 day of February, 2009.

/s  
LYNN ADELMAN  
District Judge